UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| HOWARD JOHNSON II, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-17-1206 |
| | § | |
| ALLSTATE VEHICLE and PROPERTY | § | |
| INSURANCE COMPANY, JAMES BURT, | § | |
| and WESLEY ARNOLD | § | |
| | § | |
| *Defendants*. | § | |

**MEMORANDUM OPINION AND ORDER**

Pending before the court is plaintiff Howard Johnson II's motion to remand. Dkt. 5. Having considered the motion, response, complaint, and the applicable law, the court is of the opinion that the motion should be DENIED.

**I. BACKGROUND**

This is an insurance dispute between Johnson and defendants Allstate Vehicle and Property Insurance Company ("Allstate"), James Burt, and Wesley Arnold (collectively, Defendants). In 2015, Johnson purchased an Allstate House & Home Policy (the "Policy"), insuring his property at 7691 Ameswood Road, Houston, Texas 77095 (the "Property"). Dkt. 1-1 at 9. Johnson purchased the Policy from Arnold, who is an insurance agent for Allstate. *Id.* Johnson alleges that prior to purchasing the Policy, Arnold represented to him that the Policy included hail and windstorm coverage. *Id.* Allstate responds that the Policy plainly covers windstorm and hail damage unless the damage is to the Property's interior that is not the result of a storm-created opening. Dkt. 5-4 at 24.

The Policy states:

> SECTION 1 – LOSSES WE COVER UNDER COVERAGES A, B AND C:
>
> We will cover sudden and accidental direct physical loss to the property described in Dwelling Protection-Coverage A, Other Structures Protection-Coverage B or Personal Property-Coverage C caused by the following, except as limited or excluded in this policy:
>
> 2. Windstorm or hail.
>
> > We do not cover:
> >
> > a) Loss to covered property inside a building structure, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall.

Dkt. 5 at 5, Ex. D.

On or about April 17, 2016, the Property sustained damage from a storm.[1] Dkt 1-1 at 9. Johnson submitted a claim to Allstate against the Policy for damage to the Property. *Id.* at 10. Allstate then assigned or hired Burt to adjust the claim. *Id.* On or about September 16, 2016, Burt inspected Johnson's Property, and found $190.24 in covered damage.[2] *Id.* at 10. Johnson claims that Burt's assessment undervalued the amount of damage to the property and that Burt misrepresented the cause of damage to the Property. *Id.* Johnson claims that the damage to the Property is estimated at $32,551.73. *Id.*

---

[1] Johnson asserts that the damage to the property includes, but is not limited to the roof, vents, flashings, windows, window screens, fascia, gutters, downspouts, and HVAC system. Dkt. 1-1 at 9.

[2] Johnson asserts that in a partial denial letter dated the same day as the inspection, Burt claimed that there was no storm-created opening on the roof, and that there were flashing issues and issues with the siding that appear to be contributing to the interior water damage.

On March 14, 2017, Johnson filed suit against Defendants in the 133rd Judicial District Court of Harris County, Texas. *Id.* at 1. Johnson asserts causes of action (1) against Arnold for violations of the Texas Deceptive Trade Practices Act ("DTPA"), the Texas Insurance Code, and common law fraud; (2) against Allstate for breach of contract, breach of the duty of good faith and fair dealing, fraud, and violations of the DTPA and Texas Insurance Code; and (3) against Burt for fraud, negligence, gross negligence, and violations of the DTPA and the Texas Insurance Code. *Id.* at 13–23 (citing Tex. Bus. & Com. Code Ann. § 17.41–63, § 17.50 (West 2017), Tex. Ins. Code Ann. § 541–42 (West 2017); Tex. Civ. P. & Rem. Code § 41.001(11)(A)-(B) (West 2017)).

On April 18, 2017, Allstate and Arnold removed the case to federal court on the basis of diversity jurisdiction. *Id.* at 1. On May 1, 2017, Johnson filed a motion to remand. Dkt. 5. On May 19, 2017, Defendants responded. Dkt. 10.

## II. LEGAL STANDARDS

### A. Removal

A defendant may remove an action to federal court in instances where the court would have original jurisdiction over the case. 28 U.S.C. § 1441 (2012). Subject matter jurisdiction based on diversity requires that (1) complete diversity exists among the parties, and (2) the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. A case may be removed despite the presence of a non-diverse defendant if that defendant has been improperly joined, *i.e.*, without a legal basis to do so. *Hornbuckle v. State Farm Lloyds*, 385 F.3d 538, 542 (5th Cir. 2004). As the removing party, the defendant bears the "heavy burden" of demonstrating improper joinder. *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003). To meet this burden, the party seeking removal must demonstrate that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against the in-state defendant." *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005) (citations

3

omitted). The statutory right to removal is strictly construed because "removal jurisdiction raises significant federalism concerns." *Willy v. Coastal Corp.*, 855 F.2d 1160, 1164 (5th Cir. 1998). Accordingly, any doubt about the propriety of removal "must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

"A non-diverse defendant may be found to be improperly joined if the plaintiff fraudulently pled the jurisdictional facts or if the removing defendant demonstrates that the plaintiff cannot establish a cause of action against the non-diverse defendant." *Robinson v. Allstate Tex. Lloyds*, No. H-16-1569, 2016 WL 3745962, at *1 (S.D. Tex. July 13, 2016) (Atlas, J.); *see also Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 199 (5th Cir. 2013). Here, Defendants assert only the second basis for improper joinder, which requires the court to determine whether Johnson has pled any viable claims against Arnold. *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (*en banc*). To establish improper joinder under the second basis, the court must find that "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Id.* Therefore, Defendants have the heavy burden of establishing that Johnson has failed to meet the federal pleading standard on every claim asserted against Arnold. *Willy*, 855 F.2d at 1164 (5th Cir. 1998).

**B.      12(b)(6) Standard**

To demonstrate that Johnson failed to meet the federal pleading standard, the court performs a Rule 12(b)(6)-type analysis or by "piercing the pleadings" in a summary judgment-like inquiry. *Smallwood*, 385 F.3d at 573–74. In a 12(b)(6)-type analysis, a federal court must look to the original state court pleading but apply the federal pleading standard. *Int'l Energy Ventures Mgmt.*, 818 F.3d at 205.

"In considering 12(b)(6) motions, courts generally must accept the factual allegations contained in the complaint as true." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982). The court does not look beyond the face of the pleadings when determining whether the plaintiff has stated a claim under Rule 12(b)(6). *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [but] a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65 (citing *Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)) (internal citations omitted). And, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965 (supporting facts must be plausible—enough to raise a reasonable expectation). The supporting facts must be plausible—enough to raise a reasonable expectation that discovery will reveal further supporting evidence. *Id.* at 556. If "a complaint shows on its face that it is barred by an affirmative defense, a court may dismiss the action for failing to state a claim." *Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F. Supp. 2d 972, 980 (S.D. Tex. 2007) (Harmon, J.) (citing *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). Ultimately, "if a plaintiff can survive a 12(b)(6) challenge, there is no improper joinder." *Smallwood*, 385 F.3d at 573.

**C.  Summary Inquiry Standard**

In some cases, a court may use its discretion to further pierce the pleadings and conduct a summary judgment-type inquiry to "identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Id.* at 573–74. This type of inquiry is appropriate when the plaintiff has stated a claim but has misstated or omitted facts that would

5

determine the propriety of joinder.³ *Id.* at 573. Additionally, "the focus of the inquiry must be on the joinder, not the merits of the plaintiff's case." *Id.*; *see also Holmes v. Acceptance Cas. Ins. Co.*, 942 F.Supp. 2d. 637, 644 (E.D. Tex. 2013) (Crone, J.) ("The court, however, must carefully distinguish an attack on the overall merits of the case from a showing that defendants were improperly joined in order to defeat diversity."). In this case, Allstate has presented summary judgment-type evidence in the form of an affidavit taken from Arnold. Dkt. 10-1. This affidavit disputes Johnson's allegations that misrepresentations about the scope of the Policy's coverage were made. Dkt. 10-1. A summary judgment-type analysis based on this affidavit is not appropriate here because Arnold's contradicting evidence would not serve to identify "discrete and undisputed facts." *Smallwood*, 385 F.3d at 573. Therefore, the court's inquiry will center on a Rule 12(b)(6)-type analysis to determine if Johnson's claims against Arnold meet the federal pleading standard.

### III. ANALYSIS

It is undisputed that diversity of citizenship exists between Johnson and defendants Allstate and Burt. Dkt. 1 at 2; Dkt. 5. Allstate is a foreign organization incorporated pursuant to the laws of the State of Illinois and does not have its principal place of business in the State of Texas. Dkt. 1 at 2. Burt is an individual resident of Grove, Oklahoma. *Id.* It is also undisputed that Johnson and Arnold are both residents of Texas. *Id.* The parties agree that the amount in controversy exceeds $75,000. *Id.* Johnson contends that remand is appropriate because his claims against Arnold, the

---

³While the court has the discretion to choose between the two tests, "the summary inquiry is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 386 F.3d at 573–74. Examples of when a summary inquiry is appropriate include: "the in-state doctor defendant did not treat the plaintiff patient, the in-state pharmacist defendant did not fill a prescription for the plaintiff patient, a party's residence was not alleged, or any other factor that can easily be disproved if not true." *Id.* at 574 n.12 (citing *Irby*, 326 F.3d at 648–49).

non-diverse defendant, are sufficiently well-pled and thus destroy the court's subject matter jurisdiction. *Id.* at 6–7. Defendants counter that this case should remain in federal court because Arnold was improperly joined. Dkt. 10. Defendants argue that the claims against Arnold should be dismissed because (1) Johnson's claims are conclusory and not sufficient to survive a 12(b)(6) dismissal, and (2) Johnson's alleged misrepresentation is not actionable. Dkt. 10. Therefore, the court will examine the Defendants' arguments and determine whether "there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573.

**A.    The Sufficiency of Johnson's Claims Against Arnold**

Johnson alleges that Arnold's conduct in selling the Policy to him violates (1) the DTPA, (2) the Texas Insurance Code, and (3) constitutes a claim for common law fraud. Dkt. 1-1. The court will (1) examine the elements Johnson needs to allege under the DTPA, the Texas Insurance Code, and common law fraud and (2) conduct a 12(b)(6) analysis on Johnson's allegations to determine if they are sufficient to state a claim.

**1. DTPA, Texas Insurance Code, and Common Law Fraud**

To state a valid claim under the DTPA, Johnson must show that (1) he is a consumer, (2) that the defendant engaged in false, misleading, or deceptive acts, and (3) that those acts were a producing cause of his damages." Tex. Bus. & Com. Code Ann. § 17.50(a)(1). The DTPA defines a consumer as " The DTPA defines a "consumer" as "an individual ... who seeks or acquires by purchase or lease, any goods or services." § 17.54(4). "Purchase of an insurance policy is the purchase of a service within the meaning of the Texas DTPA." *Webb v. UnumProvident Corp.*, 507 F. Supp. 2d 688, 678 (W.D. Tex. 2005) (citing *3Z Corp v. Stewart Title Guar. Co.*, 851 S.W.2d 933, 937 (Tex.App.—Beaumont 1993, no writ)). Thus, Johnson is a consumer under the terms of the DTPA

and can bring suit for any violations of the DTPA connected to his purchase of his Policy.

"Both the Texas Insurance Code and the Texas Deceptive Trade Practices Act permit a private cause of action against 'any person' who commits one of the prohibited acts or practices." *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999); *see also* Tex. Ins. Code Ann. § 541.002(b); Tex. Bus. & Com. Code Ann. § 17.50. "Texas courts [recognize] that the statutory language is broad enough to permit in the appropriate circumstances a cause of action against an insurance agent who engages in unfair or deceptive acts or practices." *Griggs*, 181 F.3d at 701 (citing *Liberty Mut. Ins. Co. v. Garrison Contractors, Inc.*, 966 S.W.2d 482 (Tex. 1998) and *State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908 (Tex. App.—Austin 1991, no writ)). Therefore, Arnold, Allstate's agent, can be held liable under the DTPA and the Texas Insurance Code.

The DTPA prohibits "the use or employment by any person of a false, misleading, or deceptive act or practice that is: (1) [a] breach of an express or implied warranty; (2) any unconscionable action or course of action by any person; [and] (3) the use or employment by any person of an act or practice in violation of Chapter 541, Insurance Code." Tex. Bus. & Com. Code Ann. § 17.50. Furthermore, "[the DTPA] enumerates various, nonexclusive, conduct that can constitute false, misleading, or deceptive practices — the so called 'laundry list violations' contained in [section] 17.46(b)."[4] *Tsao*, 2017 WL 746451, at *8.

---

[4]Johnson maintains that Arnold's representations about the Policy violate four specific provisions of section 17.46 of the DTPA: (1) "causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;" (2) "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has sponsorship, approval, status, affiliation, or connection which the person does not;" (3) "representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;" (4) "representing that a guaranty or warranty confers or involves rights or remedies which it does not have or involve." Dkt. 1-1 at 22 (citing Tex. Bus. & Com. Code Ann. § 17.46).

Section 541.051 of the Texas Insurance Code prohibits "mak[ing], issu[ing], or circulat[ing], or caus[ing] to be made, issued, or circulated an estimate, illustration, circular, or statement misrepresenting with respect to a policy issued or to be issued: (1) the terms of the policy; [or] (2) the benefits or advantages promised by the policy." Tex. Ins. Code Ann. § 541.051(1)(a)–(b).

Johnson also alleges that all of Arnold's acts, omissions, or failures were committed "knowingly" and "intentionally" as defined by the DTPA and the Texas Insurance Code. Dkt.1-1 at 23.

Finally, the elements of fraud under Texas law are: "(1) a [material] misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury." *Rio Grande Royalty Co. v. Energy Transfer Partners. L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).

### 2. 12(b)(6) Analysis

Johnson's allegations must feature more than labels and conclusions. *See Twombly*, 550 U.S. at 555 ("Courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'") (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932 (1986)). The bulk of Johnson's allegations against Arnold merely tracks the statutory language of the relevant provisions of the DTPA and the Texas Insurance Code without alleging any case-specific facts. *See, e.g.,* Dkt. 1-1 at 22 ("By Arnold's acts and omissions, failures, and conduct, Arnold violated sections 17.46(b)(2) and 17.46(b)(5) of the DTPA; Arnold's violations include causing confusion as to the policy benefits and representing that the Policy had benefits or characteristics that it did not possess;" "The conduct, acts, omissions, and failures of Arnold are unfair practices in the business of insurance in violation of section 17.50(a)(4) of the DTPA."); *see also Mt. Olive Missionary Baptist Church v. Underwriters at Lloyd's London*, No. CV H–16–234, 2016 WL 4494439, at *3 (S.D. Tex. Aug. 26, 2016) (Miller,

J.) (citing *Okenkpu v. Allstate Texas Lloyd's*, CV H–16–234, 2016 WL 4494439, at *7 (S.D. Tex. Mar. 27, 2012) (Harmon, J.) (collecting cases)). Johnson's formulaic recitation of the statutory language in these allegations is insufficient to fulfill his obligation to provide the grounds on which he is entitled to relief. *Twombly*, 550 U.S. at 555.

Nonetheless, after separating the legal conclusions, one factual allegation remains which the court must assume is true for the purpose of this analysis: When Arnold sold the Policy to Johnson, Arnold misrepresented that the Policy afforded benefits in the form of payment for hail and wind damages, when it did not. Dkt. 1-1 at 16–18. The court will assume this is true and determine whether it "plausibly give[s] rise to an entitlement to relief." *Iqbal*, 556 U.S. at 678–79.

Because Johnson's remaining claim is based on a misrepresentation, he "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008). "Put simply, Rule 9(b) requires the complaint to set forth the 'who, what, when, where, and how' of the events at issue." *Dorsey*, 540 F.3d 339. Johnson's claims alleging misrepresentation in violation of the DTPA and the Texas Insurance Code are also subject to the heightened pleading requirements of Rule 9(b). *Lone Star Ladies Inv. Club v. Schlotzsky's, Inc.*, 238 F.3d 363, 368 (5th Cir. 2001) ("Rule 9(b) applies by its plain language to all averments of fraud, whether they are part of a claim of fraud or not.") (citations omitted).

Defendants refer the court to *Waters v. State Farm Mutual Auto Insurance Co.*, 158 F.R.D. 107 (S.D. Tex. 1994) (Harmon, J.) to argue that Johnson's claims of misrepresentation or common law fraud against Arnold are conclusory because Johnson's pleadings fail to specify a time, place, or the content of any alleged misrepresentation. Dkt. 1 at 5. In *Waters*, the insured sued his insurer and the insurer's agent who had written the insured's policy to recover benefits. *Id.* at 108. In addition,

the insured alleged fraud and violations of the DTPA and of the Texas Insurance Code. *Id.* The insured merely alleged that the insurer's agent made a misrepresentation about the benefits of an insurance policy when the agent sold the policy to the insured. *Id.* The insured's counsel stated in a letter that he did not know of any evidence linking the insurance agent to a material misrepresentation, but that he suspected the evidence would show that the insurance agent had made a misrepresentation. *Id.* The *Waters* court found this allegation insufficient and that more specific facts were required for a claim of fraud under Rule 9(b). *Id.*

By contrast, Johnson does not merely plead that Arnold made a general misrepresentation about the policy's coverage, as was the case in *Waters*. *Id.* Johnson specifically alleges that when he purchased his Policy, Arnold misrepresented to him that the Policy included hail and windstorm coverage for the his home; yet, once Allstate interpreted the Policy, coverage was largely denied. Dkt. 1-1. Johnson claims that the denial damaged him because he did not receive his expected insurance payment. Dkt.1-1 at 9. Johnson's allegations are more specific because they identify who made the misrepresentation, the contents of the misrepresentation, and why the misrepresentation was false. Johnson does not expressly allege time and place in his complaint, but it is fair to infer that this alleged misrepresentation took place when Johnson purchased the Policy at Arnold's place of business. Dkt. 1-1; *See U.S. ex. rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009) (quoting *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)) ("'Rule 9(b)'s ultimate meaning is context-specific,' and thus there is no single construction of Rule 9(b) that applies in all contexts.").

**B.   Actionable Misrepresentation**

Second, the Defendants also argue that the alleged misrepresentation is not actionable. Defendants argue that there was no affirmative misrepresentation and Johnson's reliance on Arnold's

alleged misrepresentation was not justifiable due to the express terms of the Policy.[5] Defendants do not expressly identify what "affirmative misrepresentations" Johnson failed to allege, but the court will examine (1) whether there was a misrepresentation which induced Johnson to purchase the policy, and (2) whether Johnson's reliance on the misrepresentation about the scope of windstorm and hail coverage was justifiable.

**1. Inducement**

"Before any misrepresentation can be said to be actionable, it must have induced the purchase." *Tsao*, 2017 WL 746451, at *9. Here, the court finds that Johnson's claim is too vague to meet his burden of specificity under Rule 9(b) because there are no allegations suggesting that Johnson relied on Arnold's misrepresentation in connection with Johnson's decision to purchase the Policy. Johnson argues that whether Arnold actually made misrepresentations, whether the Policy actually did include windstorm and hail coverage, and whether he might actually recover from Arnold are all immaterial questions. Dkt. 5 at 6 (citing to *Sanders v. Sentry Insurance a Mutual Insurance Co.*, No. 5:16-CV-00164-C (N.D. Tex. Aug. 23, 2016)). In *Sanders*, another insurance case that joined an insurance agent for misrepresentation, the court granted an motion to to remand. Dkt. 5, Ex. C. However, in *Sanders*, the plaintiff alleged that *but for* the insurance agent's misrepresentation about the scope of the insurance policy, the plaintiff would not have purchased the policy. *Id.*; *see* Dkt. 5-3 at 5 (emphasis added). A but-for allegation connecting the defendant's deceptive conduct with the consumer transaction is absent in Johnson's complaint. Dkt. 1-1. The bare allegation that

---

[5]Defendants also argue that even if Johnson's claims are sufficiently specific, representations that "everything is covered" are not actionable." Dkt. 10 at 7–11. Johnson never alleged that Arnold said "everything is covered," so the court will not consider this argument. Dkt. 1-1.

Arnold misrepresented the scope of Johnson's windstorm and hail coverage is not sufficient to show that the misrepresentation induced the purchase. *See Tsao*, 2017 WL 746451, at *9.

### 2. Justifiable Reliance

Furthermore, under Texas Law, the claimant must show his reliance on the alleged misrepresentation was justifiable. *Lewis v. Bank of Am. NA*, 343 F.3d 540, 546 (5th Cir. 2003)). "A fraud plaintiff 'cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation.'" *Lewis,* 343 F.3d at 546 (quoting *Field v. Mans*, 516 U.S. 59, 70–71, 116 S.Ct. 437 (1995)). Therefore, reliance "upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Mae v. U.S. Prop. Sols., LLC*, No. CIV.A. H-08-3588, 2011 WL 66161, at *6 (S.D. Tex. Jan. 10, 2011) (Miller, J.) (quoting *DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 858 (Tex. App–Houston [14th Dist.] 2002, pet. denied) (internal quotations omitted)).

Defendants argue that because Johnson's policy expressly covers windstorm and hail damage (though with an exclusion for interior damage that is not the result of a storm-created opening) that Johnson's reliance on Arnold alleged representation is barred. Dkt. 10 at 7. Indeed, Johnson makes no allegation that Arnold made an affirmative misrepresentation about the meaning of the Policy's windstorm and hail exclusion. *See Wyly v. Integrity Ins. Sols.*, 502 S.W.3d at 909, 912 (Tex.App.—Houston [14th Dist.] 2016, no pet.) (holding that an insured is deemed to know the contents of the insured's insurance policy unless the insured alleges an affirmative misrepresentation that would conflict with those terms). Therefore, because there is no alleged misrepresentation about the meaning of the Policy's windstorm and hail exclusion and the terms of the Policy expressly cover windstorm and hail damage, Johnson's reliance on Arnold's misrepresentation is unjustifiable.

13

Defendants also cite the "mistaken belief" rule to argue Johnson's reliance on Arnold's alleged misrepresentation are unactionable. Dkt. 10. "In the absence of some specific misrepresentation . . . a policyholder's mistaken belief about the scope or availability of coverage is not generally actionable under the DTPA." *Moore v. Whitney–Vaky*, 966 S.W.2d 690, 692 (Tex.App.—San Antonio 1998, no pet.). Johnson does not allege any specific facts about why Arnold's misrepresentation warped his understanding of the express terms of the policy or of the exclusion to windstorm and hail coverage. Dkt. 1-1.

In sum, Johnson's allegations feature more details than a general allegation of misrepresentation. Yet, Johnson's misrepresentation allegations are not actionable because: (1) the bare allegation that Arnold misrepresented the scope of Johnson's windstorm and hail coverage is not sufficient to show that Arnold's misrepresentation induced the purchase, and (2) because there is no alleged misrepresentation about the meaning of the Policy's windstorm and hail exclusion and the terms of the Policy expressly cover windstorm and hail damage. Therefore, Johnson's reliance on Arnold's alleged misrepresentation is unjustifiable. Therefore, as currently pled, Johnson's original petition fails to state any actionable claims for common-law fraud, misrepresentation under the DTPA, or misrepresentation under the Texas Insurance Code against Arnold.

Accordingly, the court finds that Defendants have met their heavy burden to show that Arnold was improperly joined because Johnson fails to state a claim against Arnold. Therefore, the court has "no reasonable basis to predict" that Johnson might be able to recover against Arnold. *Smallwood*, 385 F.3d 573. Johnson's claims against Arnold are DISMISSED WITHOUT PREJUDICE. Because there is complete diversity between Arnold and defendants Allstate and Burt, Johnson's motion to remand is DENIED.

## IV. CONCLUSION

Based on the foregoing, Johnson's motion to remand (Dkt. 5) is DENIED and Johnson's claims against Arnold are DISMISSED WITHOUT PREJUDICE.

Signed at Houston, Texas on July 13, 2017.

_____
Gray H. Miller
United States District Judge